IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ELFINA MCINTOSH,

    Plaintiff,

v.                                     Civil Action No. 8:20-cv-00714-PX

CHRISTINE WORMUTH,

    Defendant.

***

## MEMORANDUM OPINION

Pending before the Court in this employment discrimination action is the Motion to Dismiss filed by Defendant Christine Wormuth, Secretary of the Army, and brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). ECF No. 12.[1] The motion is fully briefed and no hearing is necessary. *See* Loc. R. 105.6. Although the Court agrees that the Complaint, as pleaded, is insufficient as a matter of law, McIntosh will be given 28 days to amend her Complaint to address the identified deficiencies.

**I.  Background**

McIntosh proceeds pro se, and has filed this action using the pre-printed complaint forms provided by the Court. ECF No. 1. Although McIntosh does not include any facts to support her claims, she does append to the Complaint the EEOC decision in which the agency reached the merits of her administrative claims. ECF No. 1-1. *See Fin. Indus. Regul. Auth., Inc. v. Axis Ins. Co.*, 951 F. Supp. 2d 826, 830 (D. Md. 2013) ("When reviewing a motion to dismiss, [t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed.") (internal

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Christine Wormuth in her official capacity as Secretary of the Army, is automatically substituted as a defendant for former secretary Ryan McCarthy.

quotation marks omitted).  The EEOC decision, however, is not terribly clear; the relevant events are not always in chronological order, and the decision does not help the Court determine which claims McIntosh seeks to pursue.  That said, the Court reads the Complaint as incorporating the EEOC decision, and thus takes the "complaint facts" from the decision as true and in the light most favorably to McIntosh.

McIntosh began working as a contract management support specialist for the Department of the Army's Defense Veterans Brain Injury Center ("DVBIC") in Silver Spring, Maryland in September 2014.  ECF No. 1-1 at 1.  From the beginning of her time at DVBIC, McIntosh did not get along with her male supervisors, among them the department's resource manager, program evaluation chief, and deputy chief of staff.  ECF No. 1-1 at 2.  After two months with DVBIC, McIntosh asked to be transferred to a different department because of the constant disagreement she was having with management.  *Id.*  McIntosh, in particular, cited that DVBIC's chief of staff, who is also a woman, had acted unreasonably and with hostility towards her after McIntosh had brought to the chief's attention financial misconduct on the part of government contractors.  *Id.*  McIntosh believed that if she reported overspending further, she would face retaliation.  *Id.*

Subsequently, McIntosh's supervisors reduced her duties and intentionally kept her "out of the loop," of certain unspecified decisions.  McIntosh alleges that she was treated "differently" than certain identified coworkers who assumed some supervisory role over her.  ECF No. 1-1 at 2–5.  A male direct supervisor, for example, had been granted permission to attend a leadership training conference, but McIntosh was not extended the same opportunity.  *Id.* at 2.  Also, her male supervisors regularly teleworked for childcare purposes, but McIntosh was not granted permission to do the same.  *Id.*  McIntosh also explains that in July 2015 she accidently

misidentified the kind of leave she had taken, and in response supervisors provided her no leeway, and declared her absent without leave (AWOL). *Id.* at 3.

McIntosh also avers that supervisors bullied and harassed her on multiple occasions. In January 2015, a coworker had falsely accused McIntosh of sexual harassment. ECF No. 1-1 at 3, 5. The deputy chief of staff, in response, conveyed that he viewed this accusation as harmless because McIntosh was a single woman, and that the situation would be different if she were married. *Id.* Supervisors also warned her that the workplace could become "uncomfortable" for her if she filed a grievance. *Id.* at 5. Later that year, on August 7, 2015, the deputy chief of staff became combative with McIntosh and got "in [her] face" when she refused to cancel a scheduled day off. *Id.*

On August 21, 2015, McIntosh made initial contact with an EEO counselor to complain about her work environment. Around the same time, either on August 7 or 27, 2015 (ECF No. 1-1 at 2, 4), McIntosh received a poor performance evaluation.[2] Although her rating technically corresponds to a "successful" performance, McIntosh complains that the score was too low as compared to the quality of her work. ECF No. 1-1 at 2. McIntosh requested that her second level supervisor, the deputy chief of staff, change the score and he declined to do so. *Id.*

On September 15, 2015, McIntosh informed her supervisors of her upcoming interview with an EEO officer. Supervisors, in response, "forced" her to reschedule the appointment, ostensibly by commanding that she first complete certain projects in advance of her interview. *Id.* at 3–5. And just the day before, McIntosh told her supervisors that she had accepted a position outside of DVBIC. The program evaluation chief retorted that she had no right to look

---

[2] The Court acknowledges that this "poor" evaluation likely occurred on only one of the two dates. But the Court cannot tell from the EEOC decision which date is the correct one. Obviously, this date matters, because if the evaluation occurred *after* McIntosh complained to the EEO, and if she can aver plausibly that her evaluating supervisors knew that she had complained, the evaluation may support her retaliation claim. *See infra III.B.3.*

3

for another position, criticized her work, and required that she give DVBIC two weeks' notice before she could leave. *Id.* at 3, 5. The next day, he banged on McIntosh's office door, yelling and reprimanding her for closing the door, and threatening that "if [he had] to tell [McIntosh] again [she'd] see what happen[s]." *Id.* at 5.

On October 17, 2015, McIntosh filed a formal charge with the EEO, alleging that she suffered from discrimination and a hostile work environment on the basis of her sex, and in retaliation for her initial August meeting with the EEO counselor. ECF No. 1-1 at 4. Shortly after, EEO began a formal investigation into McIntosh's allegations. ECF No. 12-2. The assigned EEO investigator, citing scheduling difficulties, chose to gather relevant evidence by reaching out to witnesses by email and soliciting from them sworn declarations. *Id.* The EEO investigator, after having interviewed McIntosh, attempted unsuccessfully to obtain a declaration from her. *Id.*; ECF No. 1-1 at 9.

Following the investigation, the EEO office provided McIntosh with the written investigation report. ECF No. 1-1 at 5. The report notified McIntosh of her right to request a hearing before an Equal Employment Opportunity Commission ("EEOC") Administrative Judge ("AJ"). *Id.* McIntosh so requested, and DVBIC pressed for the AJ to issue an opinion without a hearing. On May 14, 2018, the assigned AJ denied McIntosh's request for a hearing and issued a decision in the Army's favor, finding that the Army had not subjected McIntosh to discrimination. *Id.* at 6. McIntosh appealed the AJ's decision to the EEOC which affirmed the AJ on December 17, 2019. ECF No. 1-1.

On March 17, 2020, McIntosh filed a pro se Complaint on pre-printed forms provided by this Court. On the form, McIntosh states that she was a "victim of discrimination and retaliation" and that the "agency refused to remove [her] from the hostile work environment."

ECF No. 1 at 6.  As to relief, she seeks monetary damages and an order directing the Army to expunge negative information from her record and provide her a written apology.  *Id.* at 7.

Defendant moves to dismiss the Complaint for lack of subject matter jurisdiction, arguing that McIntosh failed to properly exhaust her administrative remedies as a necessary precondition to filing suit.  ECF No. 12-1 at 12–14.  Defendant also maintains that even if she had exhausted her claims, McIntosh has failed to aver sufficient facts that make plausible she had suffered discrimination, retaliation or a hostile work environment.  *Id.* at 14–20.  Because this Court views administrative exhaustion not as a jurisdictional prerequisite, but rather as a claims processing rule, *see Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019), the Court construes this argument as it does the remaining arguments, as subject to review pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. Standard of Review

A motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint.  In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the Court "accepts the factual allegations in the complaint as true and construes them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018).  The Court may also consider documents attached to the motion to dismiss when "integral to and explicitly relied on in the complaint, and when the [opposing parties] do not challenge the document[s'] authenticity." *Zak v. Chelsea Therapeutics, Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)) (internal quotation marks omitted).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (internal quotation marks omitted). "A plaintiff must provide sufficient detail to show that he has a more-than-conceivable chance of success on the merits." *Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018), *vacated on other grounds*, 140 S. Ct. 2736 (2020).

A district court must liberally construe a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). The court may not, however, ignore a clear failure in the pleading to allege facts that set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) (citation omitted). If the Court can reasonably read the complaint as stating a claim for relief, it should do so; however, a district court may not rewrite a complaint in order for it to survive a motion to dismiss. *Desgraviers v. PF-Frederick, LLC*, 501 F. Supp. 3d 348, 351 (D. Md. 2020) (citing *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

### III.  Analysis

#### A.  Rule 8(a) Pleading Requirements

Defendant first argues that the Complaint fails to comply with the basic pleading requirements under Federal Rule of Civil Procedure 8(a). ECF No. 12-1 at 9–12. But without justification, Defendant artificially confines the Complaint to the pre-printed form. *Id.* at 9 ("In the 'statement of claim' section of the Complaint, Plaintiff alleges in full: [transcribed five lines of text]. That's it."). The Complaint, however, incorporates the EEOC decision. ECF No. 1-1. When considering the EEOC decision as integral to the Complaint, Defendant's argument lacks any force. Accordingly, the Court looks to the Complaint and the facts set forth in the EEOC decision when assessing the sufficiency of the claims.

### B. Title VII claims

The EEOC decision appended to the Complaint references three discrimination claims: disparate treatment, hostile work environment and retaliation. ECF No. 1-1 at 9–10. The Court addresses each separately.

#### 1. Disparate Treatment

Title VII makes it unlawful "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. As to her disparate treatment claim, McIntosh must aver facts by which the Court could infer plausibly (1) McIntosh's membership in a protected class; (2) her satisfactory job performance; (3) that she was subject to an adverse employment action; and (4) that others outside the protected class with similar job functions were treated more favorably. *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010). At the motion to dismiss stage, the Complaint must, at a minimum, "include sufficient factual allegations to show plausibly that the plaintiff suffered an adverse employment action because of her" sex. *Cobb v. Towson Univ.*, No. ELH-14-02090, 2015 WL 3654562, at *7 (D. Md. June 10, 2015).[3]

To constitute an adverse action, the employer's "conduct must materially alter the terms, conditions, or benefits of employment." *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 329 (D. Md. 2003). As here, where a plaintiff's theory of discrimination is by comparison to employees from a non-protected class, the plaintiff ultimately "must demonstrate that the comparator was

---

[3] At the motion to dismiss stage, McIntosh need not plead a prima facie case of discrimination as articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510, 515 (2002); *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Rather, the complaint must allege facts that "raise a right to relief above the speculative level." *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). Nevertheless, the elements of a prima facie case provide helpful guidance when reviewing "the adequacy of the allegations." *Niner v. Garrett Cty. Pub. Works*, No. ELH-17-2948, 2018 WL 3869748, at *16 (D. Md. Aug. 15, 2018).

'similarly situated' in all relevant respects . . . Such a showing would include evidence that the employees dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Johnson v. Balt. City Police Dep't*, No. ELH-12-2519, 2014 WL 1281602, at *19 (D. Md. Mar. 27, 2014) (quoting *Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 n.10 (D. Md. 2013); *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010)). This is not to say that comparators must be precisely equivalent to the plaintiff, but sufficient similarity must exist to allow appropriate comparison. *See Roberts v. Coffey*, No. DKC-10-3359, 2012 WL 2000353, at *4 n. 11 (D. Md. June 4, 2012); *see also Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) ("[T]he purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel."), *aff'd*, 553 U.S. 442 (2008).

When viewing the Complaint facts as true and most favorably to McIntosh, the Complaint does not make plausible that she was treated adversely on account of her gender. Although the facts show she had been treated differently than certain male employees (identified as "S1" and "S2" in the EEOC decision) each were McIntosh's supervisors, and so the Court cannot, without more, assume they were "similarly situated" to McIntosh in all relevant respects." *Johnson*, 2014 WL 1281602, at *19 (D. Md. Mar. 27, 2014). *Cf. Haywood*, 387 F. App'x at 359; *Coleman,* 626 F.3d at 191; *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019). More fundamentally, the facts before the Court do not make plausible that McIntosh suffered adverse treatment on account of her gender. On this element, the discrimination claim fails as a matter of law. *See Coleman*, 626 F.3d at 190–91 (dismissing the

plaintiff's claim of discriminatory termination where the complaint failed to allege facts establishing that comparators were similarly situated or that race was the basis for termination).

That said, the Court recognizes that McIntosh has never been given an opportunity to amend her Complaint, which she ought to receive in fairness. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013) (court retains discretion to dismiss claims without prejudice); *Carter v. Norfolk Cmty. Hosp. Ass'n*, 761 F.2d 970, 974 (4th Cir. 1985); *Cosner v. Dodt*, 526 F. App'x 252, 253 (4th Cir. 2013) (where plaintiff has not yet amended complaint, fairness counsels in favor of dismissing claims without prejudice). Accordingly, McIntosh will be permitted to amend this claim to add facts that make plausible she suffered adverse employment action on account of her gender.

### 2. Hostile Work Environment

As to the hostile work environment claim, McIntosh must aver sufficient facts to make plausible that she: (1) experienced unwelcome harassment; (2) based on her gender; (3) that was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) can be imputed to the employer. *Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (quoting *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003)); *Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011). Courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (internal quotation marks and citation omitted). "A hostile environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"

9

*Boyer—Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 276–77 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (alteration in original).

The Complaint, as informed by the attached EEOC decision, reflects that McIntosh had been "berated" for seemingly minor misconduct; was subject to a combative coworker who voiced objection to her filing the grievance because she was a "single woman"; was told by a supervisor he did not "care about" her looking for a new job, that she "had no right" to look for a new job and she should be spending her time doing her job while they looked for her replacement. ECF No. 1-1 at 5. The Court acknowledges that, on its face, these allegations do not appear to describe a workplace permeated with hostility and harassment. *See Vincent v. MedStar S. Md. Hosp. Ctr.*, No. TDC-16-1438, 2017 WL 3668756, at *9–10 (D. Md. Aug. 22, 2017) (finding no hostile work environment where supervisor yelled at employee, called her "stupid," refused to communicate with her, and harassed her almost daily); *Khoury v. Meserve*, 268 F. Supp. 2d 600, 614 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004) (describing encounter where a supervisor "yelled at Plaintiff, told her she was incompetent, pushed her down in her chair, and blocked the door to prevent Plaintiff from leaving while he continued to yell at her"); *Myers v. Md. Auto. Ins. Fund*, No. CCB-09-3391, 2010 WL 3120070, at *6 (D. Md. Aug. 9, 2010) (insufficient that "instances of negative feedback may have been offensive to [plaintiff]" as "criticism is usually unwelcome"). But again, McIntosh has not yet been granted an opportunity to amend her Complaint to state in her own words the factual basis for her hostile work environment claim. Accordingly, although the claim is insufficient as pleaded, the Court will permit McIntosh one chance to amend her Complaint consistent with this decision, if possible.

### 3. Retaliation

Lastly the Court considers McIntosh's retaliation claim. Under Title VII, an employer is prohibited from taking adverse action against an employee because she has "opposed" a practice that Title VII forbids, or has "made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59-60 (2006). To sustain a retaliation claim, McIntosh must show that she (1) engaged in protected activity; (2) was subject to an adverse employment action; and (3) that a causal link exists between the two. *Coleman*, 626 F.3d at 190. Importantly, the adverse employment action necessary to sustain a retaliation claim "need not affect the terms and conditions of employment." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th Cir. 2018). "[T]he acts will be considered sufficiently adverse if they might have dissuaded a reasonable worker from engaging in protected activity." *Id.* (quoting *Burlington*, 548 U.S. at 64, 68) (cleaned up).

Defendant argues that McIntosh's complaint fails to identify any protected activity for which she was subject to retaliation. ECF No. 12-1 at 20. Clearly that is not correct. McIntosh first contacted the EEO in August 21, 2015 and claims that she suffered adverse action as a result. ECF No. 12-1; 1-1 at 4. Next on September 15, McIntosh told her supervisors directly that she had an appointment with EEO and avers that she was discouraged from attending. ECF No. 1-1 at 3.

Even so, the Court discerns no evidence suggesting that McIntosh's supervisors knew of this prior contact with the EEO office, and such knowledge is a necessary prerequisite to sustaining a retaliation claim. *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004), *abrogated on other grounds* by 570 U.S. 338 (2013) (explaining that the employer must know the employee

engaged in protected activity as a prerequisite to establishing a causal connection).  Although McIntosh avers that her supervisors gave her poor performance evaluation, subjected her to "combative" and "in her face" pressure to cancel her scheduled leave, and threatened that she must keep her office door open or "you'll see what [will] happen to you," ECF No. 1-1 at 5, no facts demonstrate that the supervisors knew at the time that McIntosh had complained to the EEO.  But, as with the other claims, McIntosh will be given one opportunity to amend the retaliation claim, if possible, to address this pleading deficiency.

### C. Failure to "Exhaust" Administrative Remedies

The Court lastly, and briefly, addresses the Defendant's claim that McIntosh's failure to be interviewed by the EEOC investigator warrants dismissal for failure to exhaust administrative remedies.  ECF No. 12-1 at 13–14.  Defendant argues that where a plaintiff refuses to participate in the administrative process, and frustrates the purpose of encouraging resolution short of a civil suit, the Complaint should be dismissed for failure to exhaust administrative remedies.  Although Defendant is correct that "a plaintiff's failure to cooperate in the administrative process precludes exhaustion when it prevents the agency from making a determination on the merits," *Jasch v Potter*, 302 F.3d 1092, 1094 (9th Cir. 2002), the Court cannot conclude that this is what took place here.  First and most obviously, the EEOC *did* make a determination on the merits as laid out in the EEOC decision.  ECF No. 1-1.  By contrast, the few cases on which the Defendant relies arise where a plaintiff has plainly flouted specific orders, *see Davis v. Potter*, No. 3:10-cv-80, 2010 WL 3943781, at *2 (W.D.N.C. Oct.7, 2010) (EEOC investigator submitted a letter "requiring" that plaintiff participate in the process by submitting an affidavit);  or where the plaintiff's refusal to cooperate prevented the agency from reaching a decision on the merits.  *See Gazzero-Langford v. Shinseki,* No. 2:12-cv-02059, 2013 WL 125675, at *3 (E.D. Pa. Jan. 9,

2013) (agency "determined that, without Gazzerro–Langford's affidavit, her discrimination claims could not be sustained on the record before it").

McIntosh did not appear duty bound to submit an affidavit.  ECF No. 12-2.  But more importantly, the EEOC had no difficulty reaching the merits of her claims without her testimony.  ECF No. 1-1 at 6.  Accordingly, in this case, the Court cannot justify dismissal for failure to exhaust remedies.

**IV.	Conclusion**

Even when viewing the EEOC decision appended as integral to the Complaint, the Court must grant Defendant's motion to dismiss the claims.  However, because McIntosh proceeds pro se, the Court will permit her to file an Amended Complaint within **twenty-eight days** from the date of this opinion and order, to cure the deficiencies discussed above.

Even though McIntosh does represent herself, she is still obligated to state her claims clearly and succinctly, asserting all facts necessary to support each allegation.  In her Amended Complaint, she is encouraged to state the facts supporting her claims in chronological order and using numbered paragraphs.  She may also, but is not required to, attach documents that will be considered integral to the Amended Complaint.  Most essentially, McIntosh must address, if she can, the deficiencies in each of the claims.  Failure to do so may result in dismissal of the claims with prejudice.

A separate order follows.

|  8/2/21  |  /s/  |
|---|---|
| Date | Paula Xinis |
|  | United States District Judge |